Domingo LOPEZ *v.* STATE of Arkansas

CA CR 89-37                           778 S.W.2d 641

Court of Appeals of Arkansas
Division I
Opinion delivered November 1, 1989

*John Wesley Hall, Jr.* and *Craig Lambert*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. The appellant, Domingo Lopez, was tried by jury in the Pulaski County Circuit Court, Fifth Division, along with a codefendant, Juan Murillo, on the charge of possession of a controlled substance (marijuana) with intent to deliver. The appellant was convicted as charged, and he received a fifteen year term of imprisonment. The codefendant, Murillo, was acquitted.

Appellant raises three points for reversal: (1) the trial court

abused its discretion in denying the appellant's motion to sever, since (A) an inadmissible out-of-court-statement of the codefendant was used against him, and (B) the joint trial denied the appellant the right to a fair determination of his guilt; (2) the trial court's denial of appellant's motion for a mistrial, and the introduction of the inadmissible statement of the codefendant violated his right of confrontation pursuant to the sixth amendment; and (3) the trial court erred in denying the appellant's motion to suppress, since (A) probable cause for the search was lacking, and (B) whatever probable cause did exist was a product of an unlawful detention and interrogation without the benefit of *Miranda* warnings. We find no prejudicial error, and affirm. We will address the appellant's arguments beginning with the third issue raised.

Before trial, the appellant filed a motion to suppress. This matter was addressed at an omnibus hearing, and the trial court denied the motion. On appeal, the appellant argues that no probable cause for a warrantless search existed, and any probable cause that did exist was formed after and resulted from an unlawful detention and interrogation which was conducted without the benefit of *Miranda* warnings. We disagree.

The record discloses that on November 10, 1987, Trooper John Scarborough stopped the appellant in his pick-up truck for speeding on Interstate 440 over Faulkner Lake. Scarborough testified that he suspected that the appellant was an illegal alien. Scarborough also stated that the appellant told him that he was traveling to Memphis to visit family.

Scarborough related that he then approached the passenger, Murillo, and asked him for identification. When Murillo, who was also of Hispanic descent, was unable to produce any identification, Scarborough asked him to come back to the patrol car to try to locate his identification. Scarborough also testified that at that time, Murillo told him that they were going to Chicago.

Scarborough stated that he asked if either of them had previously been arrested, to which Murillo replied that he had been involved in transporting illegal aliens, and had been arrested on weapons charges. This information was confirmed, and Scarborough said he then asked if there were any weapons in the

vehicle. Appellant told him that there was a gun in the glove compartment. Scarborough, accompanied by Murillo, located and secured a weapon found there, a .22 Derringer. Scarborough testified that upon returning to the patrol car, he detected the strong odor of marijuana emanating from the truck. He said he looked with his flashlight in the camper, and then in the cab of the truck and saw nothing, but when he opened the door to the camper, the smell of marijuana was very strong. He testified that he then called Trooper Keith Eremea for assistance. Scarborough stated that he stopped the vehicle at around 11:35 p.m. Eremea testified that he received the call at 11:45, and arrived at the scene between 11:55 and midnight.

Scarborough testified that after Eremea arrived, they searched the camper finding an opened bucket of detergent, but no luggage. Scarborough stated that he noticed that the ceiling of the camper inside was a foot lower than it appeared to be from the outside, and that they pried open the plywood ceiling inside, and discovered a large quantity of marijuana, which was later weighed at 400 pounds.

In denying the motion to suppress, the trial court found that the stop and subsequent detention were authorized and brief, as it was no longer than essential under the circumstances. The court further found that Scarborough had reasonable cause to believe that the vehicle contained marijuana.

An officer who has reasonable cause to believe that a moving or readily movable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the vehicle is on a public way or waters, or other area open to the public. *Cook* v. *State*, 293 Ark. 103, 732 S.W.2d 462 (1987); Ark. R. Crim. P. 14.1. Reasonable cause exists when the facts and circumstances within the officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Munguia* v. *State*, 22 Ark. App. 187, 737 S.W.2d 658 (1987). *See also Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980). It has been recognized that the odor of marijuana is sufficient to arouse suspicion and provide probable cause for the search of a vehicle.

*See Gordon* v. *State*, 259 Ark. 134, 529 S.W.2d 330 (1976). If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States* v. *Ross*, 456 U.S. 798 (1982); *Cook* v. *State, supra; Munguia* v. *State, supra*. In reviewing the trial court's action in granting or denying motions to suppress evidence obtained by warrantless searches, the appellate court makes an independent determination based on the totality of the circumstances, but it will not set aside the trial court's finding unless it is clearly against the preponderance of the evidence. *Munguia* v. *State, supra*.

Viewing the totality of the circumstances, the evidence was that the trooper lawfully stopped the vehicle for speeding, and formed the suspicion that the occupants may have been illegal aliens. This suspicion, coupled with their having given him conflicting accounts as to their destination, justified the asking of further questions, which revealed a prior weapons violation on the part of Murillo. The trooper was then further justified in inquiring about a weapon, and subsequently securing the weapon in the vehicle, at which time he detected the odor of marijuana. Trooper Scarborough testified that he was familiar with the odor of marijuana based on his training and experience as a police officer. The credibility of this witness was a question for the trial court to determine. *Bell* v. *State*, 296 Ark. 458, 757 S.W.2d 937 (1988); *Smith* v. *State*, 292 Ark. 162, 729 S.W.2d 5 (1987). We therefore decline appellant's invitation to assess the witness's credibility on appeal. Based on a review of the totality of the circumstances, we cannot say that the trial court's denial of the motion to suppress was clearly against the preponderance of the evidence.

We also do not agree with the appellant's contention that the appellant was unreasonably detained, or that the detection of the odor of marijuana resulted from an interrogation and information received without *Miranda* warnings having been given. In *Berkemer* v. *McCarty*, 468 U.S. 420 (1984), the Supreme Court held that persons temporarily detained pursuant to a routine traffic stop are not "in custody" for the purposes of *Miranda. See also, Pennsylvania* v. *Bruder*, ___ U.S. ___, 109 S.Ct. 205 (1988). The Court reasoned that *Miranda* was not implicated in these situations as the stop is presumptively

temporary and brief, it is in public, and that the atmosphere surrounding an ordinary traffic stop is substantially less "police dominated" than that surrounding the kinds of interrogation at issue in *Miranda*. It was held that a motorist detained pursuant to a traffic stop is entitled to a recitation of his rights only when he is "subjected to treatment that renders him 'in custody' for practical purposes." 468 U.S. at 440. The Court also said that the officer may ask the detained a moderate number of questions to determine his identity and to try to obtain information confirming or disspelling the officer's suspicions. Guided by these principles, and in light of the circumstances surrounding the detention, we conclude that *Miranda* warnings were not required in this instance.

As part of the first issue raised by the appellant, he contends that the trial court abused its discretion in denying the appellant's motion to sever on the ground that an inadmissible out of court statement made by Murillo was used against him in violation of Ark. R. Crim. P. 22.3. As his second argument for reversal, he contends that the trial court erred, citing *Bruton* v. *United States*, 391 U.S. 123 (1968), in denying his motion for a mistrial and allowing the introduction of this statement as being violative of the right of confrontation guaranteed by the sixth amendment. Since these issues are related, we will address them together.

At the omnibus hearing, it was disclosed that Trooper Scarborough had fallen into a lake while photographing the marijuana that was discovered. Trooper Eremea testified that when this occurred, Murillo exclaimed, "What happened? Did he drop some of our marijuana in the water and go after it?" The appellant moved for a severance based on the possible introduction of this statement at trial. The trial court initially denied a severance on this ground on a determination that the statement was admissible as a statement of a co-conspirator pursuant to Ark. R. Evid. 801(d)(2)(v). The court deferred making a definitive ruling; however, during opening statement, Murillo's counsel mentioned the statement whereupon appellant's counsel moved for a mistrial. The trial court denied the motion and admonished the jury.

In *Bruton* v. *United States, supra*, the Supreme Court held that a defendant's right of cross-examination secured

by the confrontation clause of the sixth amendment is denied by the admission of incriminating statements made by a codefendant. Also, Rule 22.3 of the Arkansas Rules of Criminal Procedure provides:

> (a)  When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court shall determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court shall require the prosecuting attorney to elect one (1) of the following courses:
> (i) a joint trial at which the statement is not admitted into evidence;
> (ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the statement will not prejudice the moving defendant; or
> (iii) severance of the moving defendant.

Thus the rule sets out three options when such statements are to be introduced. The requirements of this rule are mandatory. *Moore* v. *State*, 297 Ark. 296, 761 S.W.2d 894 (1988). However the rule announced in *Bruton, supra*, is not violated when the statement is otherwise admissible as one made by a co-conspirator. *Bourjaily* v. *United States*, 107 S.Ct. 2775 (1987). Likewise, according to the language of the rule, the requirements of Rule 22.3 do not come into play if the statement is admissible against the defendant. The question then here turns on whether Murillo's statement was admissible pursuant to this exception to the hearsay rule.

Rule 801(d)(2)(v) provides that a statement is not hearsay if it is one made by a co-conspirator of a party during the course and furtherance of the conspiracy. Although the trial judge deferred ruling on this matter, he ultimately determined that the statement was admissible under this exception, permitted its introduction, and denied the motion for a severance.

The appellant advances numerous arguments contending that the statement was not admissible pursuant to the exception. However, only one of the arguments he now advances

was raised at trial. The record shows that the discussions between court and counsel concerning the admissibility of the statement under Rule 801(d)(2)(v) involved only whether there was sufficient evidence of the existence of a conspiracy for the exception to be applicable. All other questions now raised by the appellant have not been preserved for appeal. Unless a clear, specific and timely objection is made in the trial court that gives the court a fair opportunity to discern and consider the argument and correct the asserted error, the argument will not be considered on appeal. *Clark* v. *State*, 26 Ark. App. 268, 764 S.W.2d 458 (1989). Furthermore, the grounds for objection may not be changed on appeal. *Id.*

The appellant argues that the evidence of a conspiracy was non-existent. The trial court found that the two were traveling together in a vehicle where the odor of marijuana was described as strong. The two gave inconsistent statements as to their destination, and no luggage was found in the truck. We cannot say that the trial court erred in concluding that there was evidence of a conspiracy for the purposes of this exception. Although the trial court did not consider the statement as being some evidence of the existence of a conspiracy, we note that the statement itself is probative of the issue as to whether a conspiracy existed. *See Bourjaily* v. *United States, supra.* We further note that the jury was given an instruction on the conspiracy issue in connection with any statements made relative thereto without objection.

Even assuming for the moment that the statement was not admissible under Rule 801(d)(2)(v), or that a severance should have been granted because of the statement, we do not believe that reversible error would have occurred. The Supreme Court in *Schneble* v. *Florida*, 405 U.S. 427 (1972), said:

> The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

*Id.* at 430. *See also Brazel* v. *State*, 296 Ark. 563, 759 S.W.2d 28 (1988).

While Murillo was a passenger in the vehicle, the statement itself provided the most incriminating evidence of his participation in the crime. Yet despite the introduction of the statement, Murillo was acquitted; therefore the jury must not have attributed much weight to the statement. On the other hand, it was established that the appellant was the owner and driver of the vehicle in which 400 pounds of marijuana was concealed. We could conclude, therefore, in light of the evidence against the appellant, and the apparent lack of prejudice occasioned by the admission of the statement, that if there were any error it would have been harmless beyond a reasonable doubt.

Finally, the appellant argues that a severance should have been granted as the joint trial denied him the right to a fair determination of his guilt. In *McDaniel* v. *State*, 278 Ark. 631, 648 S.W.2d 57 (1983), the supreme court listed seven factors favoring severance:

> (1) where defenses are antagonistic; (2) where it is difficult to segregate the evidence; (3) where there is a lack of substantial evidence implicating one defendant except for the accusation of the other defendant; (4) where one defendant could have deprived the other of all peremptory challenges; (5) where if one defendant chooses to testify the other is compelled to do so; (6) where one defendant has no prior criminal record and the other has; (7) where circumstantial evidence against one defendant appears stronger than against the other.

*Id.* at 638, 648 S.W.2d at 60. Of these factors, only those concerning the prior convictions of Murillo and alleged antagonistic defenses are pertinent here. Appellant again makes an argument based upon the admission of the statement, but we have already disposed of that argument in the previous discussion and find it unnecessary to again address it here.

The issue of a severance is to be determined on a case by case basis considering the totality of the circumstances. *Rhodes* v. *State*, 280 Ark. 156, 655 S.W.2d 421 (1983). The trial court's decision denying a motion to sever will not be disturbed

unless the appellate court finds that there has been an abuse of discretion. *Ford* v. *State*, 296 Ark. 8, 753 S.W.2d 258 (1988).

With regard to Murillo's prior convictions, the prosecution announced at the outset that it had no intention of introducing such evidence, and had instructed the police officers who were to testify not to mention this information. Murillo chose not to testify, and no such evidence of his prior convictions was introduced. We cannot say that the appellant was prejudiced then by Murillo's criminal history.

The appellant alleges that the defenses were antagonistic. While the defenses may have been somewhat inconsistent, the record does not reveal an "irreconcilable situation" where each defendant denied involvement in the crime and placed blame on the other. *See Rhodes* v. *State, supra.* The fact that defenses may be antagonistic does not compel the granting of a severance in every instance. As stated by the court in *McDaniel* v. *State, supra*:

> We do not suggest that simply because defenses are antagonistic the trial court must grant severance or risk reversal, merely that where the defenses are antagonistic, particularly in capital cases, careful consideration should be given to *all* the factors which weigh for or against achieving substantial justice in the trial process, and where it can be seen that either defendant is unduly jeopardized by a joint trial, severance should be granted.

*Id.* at 639, 648 S.W.2d at 60 (emphasis in original).

Considering the totality of the circumstances, we cannot say that the trial court abused its discretion.

AFFIRMED.

CRACRAFT and COOPER, JJ., agree.