Maurice HAYGOOD, Lee Buford, and Robert Clinkscale, Jr. *v.* STATE of Arkansas

CA CR 90-147 807 S.W.2d 470

Court of Appeals of Arkansas
Division I
Opinion delivered April 10, 1991

*Ralph M. Cloar, Jr.*, for appellant Maurice Haygood.

*Christopher C. Mercer, Jr.*, for appellant Lee Buford.

*William H. Craig*, for appellant Robert Clinkscale.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor Gen., for appellee.

ELIZABETH W. DANIELSON, Judge. Appellants, Maurice Haygood, Grover Lee Buford and Robert Clinkscale, Jr., appeal their convictions of possession of cocaine with intent to deliver, for which each was sentenced to thirty years in the Arkansas Department of Correction. On appeal, they argue that (1) the trial court erred in denying their motion to suppress; (2) the trial court erred in denying their proposed jury instruction on the elements of joint occupancy; (3) the trial court erred in denying their motion for directed verdict; and (4) the evidence was not sufficient to sustain the verdict. We affirm.

At a hearing on a motion to suppress, evidence was introduced that about 9:45 p.m. on August 17, 1989, Sergeant Mike Sylvester, of the Little Rock Police Department, was notified by a confidential informant that between 10:00 and 11:00 p.m. Robert Clinkscale, Jr., and two other black males would be leaving the Brentwood Apartments on Baseline Road in a 1981 Delta 88

Oldsmobile, bearing Arkansas license PJJ-870, with a substantial quantity of cocaine and go to Apartment 199 of the Pines Apartment complex, approximately three-quarters of a mile down Baseline Road. Sergeant Sylvester testified that the informant had previously given information which the officer had verified; that the officer was personally acquainted with Clinkscale; and that the officer through the police department files knew Clinkscale had been "involved in cocaine trafficking." Sylvester, relying on the informant's tip, arranged for both apartment complexes to be placed under surveillance.

Sylvester said he and Detective Joseph Fisher staked out the Brentwood Apartment complex and about 10:20 p.m. the Oldsmobile, which had been described, occupied by Clinkscale and two other black males, arrived and went to the rear of the complex. Approximately fifteen minutes later the vehicle returned and stopped almost directly in front of the officers' surveillance vehicle; the driver Maurice Haygood, Jr., (whom Sylvester said he also knew as a cocaine trafficker) got out; and when the dome light came on, Sylvester saw Clinkscale sitting in the back seat. Haygood walked to the rear of his vehicle and had a brief conversation with a female who had exited another vehicle. She walked to a dumpster, threw something in it, and both she and Haygood got back into their vehicles and both cars left the Brentwood complex. Sylvester testified that Haygood took a circuitous route and went to the Pines Apartments. Sylvester said that, as they followed, he notified the other stakeout officers that the suspect vehicle was on the move and to detain the occupants when it stopped. He said he arrived at the Pines Apartments just moments after the appellants were removed from the car. He understood a gym bag was removed from the car and that it contained other bags which contained a significant quantity of cocaine.

Detective Carlos Corbin testified that he and Detective Tackett were together in a vehicle when they got the call from Sylvester. They were given a vehicle description and when the vehicle pulled up to apartment 199 of the Pines Apartments, the occupants got out and were detained until Sergeant Sylvester could get there. Corbin said he and Tackett identified themselves as police officers; that he had his service revolver drawn; and that Sylvester arrived in a matter of moments. In his report Corbin

wrote that he handcuffed Maurice Haygood, the driver of the car, and Robert Clinkscale, who was in the back seat, and that Detective Watson, who arrived on the scene about the same time as Sylvester, handcuffed Grover Buford, who was in the front passenger seat.

Detective Joe Fisher, Little Rock Police Department Narcotics Detail, testified that when he and Sergeant Sylvester arrived on the scene, Detectives Tackett and Corbin had already detained the occupants of the suspect vehicle. Fisher said he searched the car and found a green nylon gym bag on the passenger's side of the back seat. Under the gym bag, he found a Crown Royal bag which contained a fully loaded nine millimeter semiautomatic pistol with the butt sticking out. Fisher said he first secured the gun, then unzipped the nylon gym bag and found another bag inside which contained "a quantity of a white powder substance and a quantity of a solid white substance," all of which he suspected was cocaine. He said the occupants of the vehicle were then placed under arrest.

Officer Robert Martin, patrolman for the Little Rock Police Department, testified that on August 17 he received a call to meet the narcotics unit at the Pines Apartments. He said he was advised to put appellant Gary Buford in his patrol car and was going to "pat him down" when he noticed Buford was wearing a leather medallion on a cord around his neck. The medallion was of a type which frequently has a pocket in the back where razor blades or small knives are carried. He took the medallion from Buford, and in a pocket in the back of it he found a "small plastic bag containing white powder."

Appellants' first argument is that the trial court erred in refusing to suppress the evidence seized in the search of the automobile. In *Lopez v. State*, 29 Ark. App. 145, 778 S.W.2d 641 (1989), we set out the rule regarding automobile searches as follows:

> An officer who has reasonable cause to believe that a moving or readily movable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the

vehicle is on a public way or waters, or other area open to the public. *Cook* v. *State*, 293 Ark. 103, 732 S.W.2d 462 (1987); Ark. R. Crim. P. 14.1. Reasonable cause exists when the facts and circumstances within the officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Munguia* v. *State*, 22 Ark. App. 187, 737 S.W.2d 658 (1987). *See also Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980). . . . In reviewing the trial court's action in granting or denying motions to suppress evidence obtained by warrantless searches, the appellate court makes an independent determination based on the totality of the circumstances, but it will not set aside the trial court's finding unless it is clearly against the preponderance of the evidence. *Munguia* v. *State, supra.*

29 Ark. App. at 150-51. Reasonable cause can be based on the collective knowledge of police officers, *Rowland* v. *State*, 262 Ark. 783, 561 S.W.2d 304 (1978), and reasonable cause can be based upon a combination of verified information furnished by anonymous callers and evidence gathered by the police in furtherance of an investigation of the subject matter, *Willett* v. *State*, 298 Ark. 588, 769 S.W.2d 744 (1989), citing *Illinois* v. *Gates*, 462 U.S. 213 (1983).

Appellants contend this vehicle was not on a public street but rather in a private area lawfully entered, and thus exigent circumstances must have been present to validate the search. Because it is an "area open to the public," we cannot agree that the parking lot of an apartment complex qualifies as a private area even though it may be privately owned.

■ Appellants contend this was not a valid search incident to arrest because there was no reason to believe the automobile contained anything subject to seizure. When major portions of an informant's tip are verified by an officer's own observation, the officer may have reasonable cause to believe the unverified bit of the informant's information. *Draper* v. *United States*, 358 U.S. 307 (1959). The collective information known by the officers in this case—that the informant had provided reliable information in the past; that appellants Clinkscale and Haygood were known

cocaine traffickers; that an automobile fitting the description provided by the informant right down to the license number arrived at the place named within the time frame described by the informant; and that the car traveled to the exact apartment number in the exact apartment complex named by the informant—provided the officers with reasonable cause to believe the vehicle contained things subject to seizure. And if they had reasonable cause to search the vehicle, they could search every part of it and its contents that could conceal the object of the search. *United States* v. *Ross*, 456 U.S. 798 (1982). Thus, we do not believe the trial court's ruling on the motion to suppress was clearly against the preponderance of the evidence.

The appellants' second argument is that the trial court erred in denying their proposed jury instruction on the elements of joint occupancy situations. The trial court, without objection, instructed the jury according to AMCI 3304 as follows:

> There are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession exists when a person, although not in actual possession of a thing, has the right to control it and intends to do so, either directly or through another person or persons. If two or more persons share actual or constructive possession of a thing, either or all may be found to be in possession.

Based on language in *Plotts* v. *State*, 297 Ark. 66, 759 S.W.2d 793 (1988), appellants sought an addition to the above instruction. The additional language stated:

> Where there is joint occupancy of a place where contraband is found, some additional factor must be present linking the accused with the contraband. In such cases, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the thing possessed was contraband.

The trial court refused to give the requested instruction. Appellants argue that because of the court's action, the jury was not informed that mere presence in the automobile was insufficient to sustain the conviction, and without this instruction the jury could

have thought it was compelled to find all three defendants guilty without first determining that they all knew the gym bag contained cocaine.

■ The State's brief points out that even though a requested instruction is a correct statement of the law, this does not mean the trial court erred in not giving it. In *Wallace* v. *State*, 270 Ark. 17, 603 S.W.2d 399 (1980), the court said, "we have consistently held that it is not error to refuse to give a requested instruction where the subject matter is fully covered by instructions already given." In the present case, instruction AMCI 3304 correctly states the law. An instruction not included in AMCI should be given only when the AMCI instruction does not state the law or where AMCI does not contain a needed instruction on the subject. *Henderson* v. *State*, 284 Ark. 493, 684 S.W.2d 231 (1985). In addition to AMCI 3304, the court instructed the jury that each defendant was presumed to be innocent and would have to be proved guilty beyond a reasonable doubt, and that, even though they were being tried jointly, the evidence must be considered separately as to each defendant. The trial judge, in deciding not to give the instruction as requested by the defendants, expressed an opinion that the additional language they wanted to add to AMCI 3304 was redundant and might "elevate to a comment on the evidence." We find no error in the court's failure to give the instruction with the additional language requested by appellants.

■■ Appellants' last two arguments constitute a challenge to the sufficiency of the evidence. In resolving the question of the sufficiency of the evidence in a criminal case, this court affirms the judgment if there is any substantial evidence to support the finding of the trier of fact. *Ryan* v. *State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989); *Ryan* v. *State, supra.*

The evidence introduced at trial did not materially differ from the evidence introduced on the motion to suppress, with the exception of the testimony of two witnesses from the Arkansas State Crime Lab. Gene Bangs, a chemist and instrumentation

engineer at the Crime Lab, testified that he tested the substance which other evidence showed came from the pocket in the back of the leather medallion worn by appellant Buford, and it was cocaine that weighed 1.12 grams. The other witness from the Crime Lab was Gary Dallas, chief chemist in the Drug Section, who testified that the substance, which other evidence showed came from the gym bag found in the back seat of the car, tested positive for cocaine; that the weight of the powder substance was 542.3 grams; and the weight of the solid substance was 74.7 grams.

■ Appellants' sufficiency argument contends that the evidence does not tie possession of the cocaine to any appellant. Their premise is that the evidence must show some additional factor other than mere joint occupancy of a place where contraband is found. In *Plotts* v. *State, supra,* the appellant was a passenger in his own car when a zippered clothes bag containing 5 pounds 12.7 ounces of marijuana was found on the back seat. The court stated:

> Other courts have held that the prosecution can sufficiently link an accused to contraband found in an automobile jointly occupied by more than one person by showing additional facts and circumstances indicating the accused's knowledge and control of the contraband, such as the contraband's being (1) in plain view; (2) on the defendant's person or with his personal effects; or (3) found on the same side of the car seat as the defendant was sitting or in immediate proximity to him. Other facts include the accused (4) being the owner of the automobile in question or exercising dominion and control over it; and (5) acting suspiciously before or during arrest.

297 Ark. at 70 (citations omitted).

In *Nowden* v. *State*, 31 Ark. App. 266, 792 S.W.2d 621 (1990), we applied the *Plotts* rationale to affirm the conviction in a case in which the appellant was driving a truck which neither he nor the passenger owned. The truck was stopped because the decals were peeling off the license tag, and a check revealed that the plate had been issued to another vehicle. After the stop, an officer saw a grocery sack containing green vegetable matter (later tested and found to be marijuana) which was in plain view

on the floorboard on the passenger's side of the truck. We held the evidence that Nowden was exercising dominion and control over the vehicle by driving it, plus the additional factors (1) that the contraband was in an area immediately accessible to him, and (2) that Nowden exhibited nervous behavior after he was stopped were sufficient to link him to the contraband.

Likewise, in the present case, in addition to joint occupancy, there is at least one additional factor which links each of these appellants to the cocaine found in the vehicle they were in. Clinkscale is directly linked to the cocaine because it was in a bag on the back seat right beside where he had been sitting. Buford's conviction was based, not only on his joint occupancy of the automobile, but also on the cocaine found in the medallion around his neck. Moreover, there is evidence that it weighed 1.12 grams and under Ark. Code Ann. § 5-64-401(d) (1987), the possession of more than one gram of cocaine creates a rebuttable presumption that it is possessed with intent to deliver. The links between appellant Haygood and the contraband are that he was exercising dominion and control over the vehicle, and instead of taking the direct route to his destination he drove a longer, more circuitous route, and the contraband was in the passenger area of the automobile he was driving and within his immediate access. When considered in the light most favorable to the appellee, we think the evidence is sufficient to support the convictions of each of the appellants.

Affirmed.

MAYFIELD and ROGERS, JJ., agree.